This is Conn v. BDO Seidman for the appellant, Mr. Derry, and for the appellee, Mr. Samowitz. You may proceed. May it please the court and counsel, I represent Schott and Conn in connection with a case that this court is very familiar with. This is our fourth interlocutory appeal to the court. What's the purpose of all of this? I'm sorry? What's the purpose of all these appeals? The purpose of the appeals is because the circuit court gets it wrong, and we have to come to the court of appeals to get it fixed. In this particular case, we believe the circuit court got it wrong again. The Conns were here last, the time before last, on a mostly compelled arbitration, and this court ruled that the Conns' claims regarding the investment strategy and all of its causes of action except breach of contract were not arbitrable. They went back to the court to be tried in court. This court held that the breach of contract claim was arbitrable, and further held that none of the conduct or causes of action related to the investment strategy were under the contract. They were expressly excluded. So we went back to the trial court. We served discovery on BDO, and BDO filed a Rule 201 motion for protective order and to stay. And although Rule 201 is in place to regulate discovery, what BDO did was they sought a complete stay of the entire case against BDO pending a Grant Thornton appeal on statute of limitations and pending the arbitration against BDO on the breach of contract. They did not seek any relief regarding a stay pending discovery except for in their alternative relief. In the alternative relief, they sought that the court stay discovery until BDO filed a motion to dismiss. So in our opinion, the alternative relief is appropriate under Rule 201, but the actual relief staying the entire case for years is not appropriate. The question before this court then is, did the circuit court abuse its discretion in staying the entire case against BDO pending completion of the BDO arbitration and completion of the Grant Thornton appeal? And I want to break my argument down into two different sections, one dealing with the arbitration and one dealing with the appeal, because the law is a little different, but the resolution is the same. With respect to the arbitration, the law is clear that when you have a situation like we have here where you have non-arbitrable claims and arbitrable claims, that a stay is only appropriate when the arbitration can completely eliminate the court case. And the burden of proof is on BDO in this case. And what the circuit court found, and this is important, the circuit court found that the arbitration would not eliminate the trial court case. They held that BDO did not establish that the arbitration would eliminate the case in trial court, but the judge still went ahead and stayed the case. And as part of our reasoning for why it will not eliminate the trial court case is, this court, if you go back to the motion to compel arbitration order, what this court ruled was that the conduct for the investment strategy and all the causes of action other than breach of contract are the essence of the cons claims. And those causes of action and that conduct is expressly excluded from the contract. And so under the arbitration we've got a contract, and in court case we've got causes of action and conduct that are completely unrelated. The arbitration will have no effect on the court case because in the court case the contract is not even relevant. Likewise in the arbitration, the causes of action and the conduct regarding the investment strategy is not relevant. And that's taken from this court's rulings in the motion to compel arbitration. And so it's our position that because of this court's opinion on the motion to compel arbitration, that there's no way that the arbitration can dispose of the court case. And under both the Morrison case and the Kostakis case, which we've cited to in our briefs, the proper exercise of discretion in this case would require that the arbitration completely eliminate the court case. And so with respect to that part of the ruling, we believe the circuit court abused his discretion in staying the entire case that the cons have against BDO pending an arbitration that will likely take two years. Again, if the circuit court would have simply stayed the case, stayed the discovery pending BDO filing their motion to dismiss, we wouldn't be here today because we believe that's an appropriate measure to take if the court's going to take a measure in that regard. Now, according to the Grant Thornton Appeal, the law is once again that in order for a stay to be proper, the appeal would need to result in eliminating the circuit court case. Again, the circuit court, even though it entered a stay pending the Grant Thornton Appeal, actually held that BDO had not established or demonstrated that the appeal would dispose of the entire court case. And since BDO has the burden of proof in that regard, with that kind of finding from the circuit court, the holding should have been that the stay would not be entered. But in any event, the reason why the Grant Thornton Appeal will not eliminate the trial court case is because the issues that are before the Supreme Court in the Grant Thornton Appeal will not have any impact on the claims against BDO. The statute will oppose with respect to the tax return prepare exception. It's irrelevant to BDO. The ruling is because BDO was the tax return preparer of the cons, and so regardless of how the Supreme Court rules on the Grant Thornton Appeal, the holding will not affect the cons claims against BDO. To the extent the Supreme Court rules that the statute will oppose that the tax return preparer doesn't apply to Grant Thornton and looks at the five-year period of the statute will oppose, that's not going to impact BDO either because BDO represented the cons for a much longer period of time than Grant Thornton. In fact, BDO represented the cons up until at least 2006 in the audit, and Grant Thornton ceased representing the cons at about 2002. So even if the Supreme Court said that the statute opposed for five years applied to Grant Thornton, it would not impact the BDO court case. Finally, if the court were to look at the statute of limitations in the Grant Thornton Appeal, any decision that the Supreme Court has with respect to whether the statute of limitations bars the cons claims against Grant Thornton will not eliminate or dispose of the court case against BDO because we have asserted a fraudulent concealment claim against BDO, and that went through to at least 2006, and under the statute of limitations, we have five years to file suit against BDO for the time that we discover the fraudulent concealment, and we filed suit in 2009. So even a ruling on the Grant Thornton Supreme Court issues in terms of statute of limitations will not impact BDO. So the bottom line is when you look at the Grant Thornton Appeal, there's no ruling that the Supreme Court can make that will eliminate or dispose of BDO in the court case. So for those reasons, we believe that the Circuit Court abused its discretion in staying the court case against BDO pending the Grant Thornton Appeal and the BDO arbitration. Thank you. Thank you. Samowitz. Thank you, Your Honors. Cary Samowitz for the BDO defendants. Your Honors, the question before the court today is whether Judge Ford abused his discretion in deciding that considerations of judicial economy dictated staying discovery against BDO pending two very well-defined events, and we submit that the judge did not so abuse his discretion. There's a threshold matter of jurisdiction I just want to spend a moment on. As Justice Appleton, as I think you wrote in the Goodrich v. Clark case, there's only appellate jurisdiction if the court determines that what Judge Ford did was the equivalent of an injunction. And here, as Your Honor said, you have to look to the substance, not the form, of the order at issue. And also the question is, was the judge controlling his own docket or doing something that's going to affect the parties outside of the litigation? And here, the judge was squarely within doing matters of his own docket. Nothing is going to affect either side outside of this litigation. In fact, plaintiffs aren't even stopped from taking discovery because they can take discovery against BDO in arbitration. Nobody won, nobody lost. The judge just said, pending these two very well-defined events, don't take any discovery. And that's, we submit, not an appealable order. So the court should not even reach the merits of this case, which is just dismissed for that reason alone. On that aside, stepping back for a second. As this court knows, this is a very hard-fought, complex case. It involves five different transactions, tens of millions of dollars, many subtle questions of tax law, privilege issues, Fifth Amendment issues. It is probably one of the thornier cases on Judge Ford's docket. And he looked at the case and he looked at considerations of judicial economy and said, I think that I can make my life and this court system's life a lot easier by staying. And he was right for both of the reasons that he stayed the case. The first reason is the pendency of the Grant Thornton appeal. Now, Justice Appleton, as you know, you wrote the opinion in this case back in 2011. The Supreme Court of Illinois decided to take that case up on appeal. And squarely before it is the very question of what is the appropriate statute of limitations for claims against accountants? What is the appropriate statute of oppose for claims against accountants? And your Honor wrestled with those issues back in 2011. You had to predict how the Supreme Court would rule. Now we know the Supreme Court is going to rule, so there's no more guesswork involved. And it's not an unrelated case. Well, there's still guesswork as to what they're going to do. That's absolutely true. That's absolutely true. But there will be an opinion, and we'll know what the ruling is. And all those questions that you wrestled with will be answered. And it's not an unrelated case. It's just this very case. And it's against an accounting firm, just like my clients are an accounting firm. So there will be at some point, possibly within a few months, by the end of the year. It was argued back in March. So we're not talking some indefinite period of time. But before very long, we're going to know what is the appropriate statute of limitations, what is the appropriate statute of repose for claims against accountants, when do claims accrue. So that's going to make life a lot easier for Judge Ford. Now, Mr. Deere says it's not going to eliminate the case. Nobody knows. Nobody in this courtroom knows how the Supreme Court is going to rule. If the Supreme Court says that the statute of repose is five years, not five years plus two years, that should end the case. If the Supreme Court rules that plaintiff's claims accrued back in 2003, that again should end the case. Forge and concealment, they have the same Forge and concealment claims identical against Grant Thornton that they have against us. And that's exactly what the Supreme Court has in front of it. So it could very well eliminate the case if the Supreme Court rules in a certain way. If it doesn't eliminate the claims, it's certainly going to narrow the claims. For example, if all that's left is Forge and Concealment, that's a fairly narrow issue. I mean, there are some very defined events that are alleged in the complaint that they claim constitutes Forge and Concealment. If that's all that Judge Ford has to rule on, that's a much simpler case. But, you know, the bottom line is, you know, he's speculating, I'm speculating. All we know is that the Supreme Court has said we're going to decide, statute of limitations, statute of opposed for claims against accountants. In a case that the last wrongdoing was in 2003 and the claim was not filed until 2009, at the very least there's a substantial chance that the case could go away. And it makes sense just to wait for a little more period of time. That's the statute of limitations issue. The other issue is the arbitration. Now, this court back in 2009, this court said to plaintiffs, go arbitrate the breach of contract claims. And they decided not to do so. And now they're telling you today that they don't think that those claims have anything to do with the claims being litigated. In fact, in their brief to this court, in their reply brief, they say that the reason they didn't file an arbitration was that they determined that the litigation could eliminate the need for the arbitration, that the litigation could resolve the breach of contract claims. That's in their reply brief at page 3. Well, the reverse is true. The arbitration could resolve the litigation. If you look at their complaint, their breach of contract claim, and that's in appendix page 91 in the 359 appeal, their breach of contract claim is very broad. Their breach of contract claim says, in essence, that my clients told Mr. Kahn that he was entering into legitimate tax investment strategies and it turned out to be invalid tax shelters. And, in fact, the complaint alleges that five times Mr. Kahn made an investment, thought he was going to make money, lost money, but got this great tax benefit. And that's at the heart of the breach of contract claim. Now, that's the very issue that is going to be in front of Judge Ford in the litigation. What we say is that Mr. Kahn knew full well that what he was doing was not an investment, that he made misrepresentations to the IRS, and that what he was trying to do was to get a tax savings, and he knew it was improper. They, of course, say otherwise, and that's an issue to be resolved. But that's an issue that's going to be resolved in the arbitration. The arbitrators are going to get this breach of contract claim, and they will issue a ruling. They will issue a ruling that says, yes, Mr. Kahn knew what he was doing, or no, he didn't know what he was doing. They're also going to rule on portion of concealment. If the Supreme Court has left only that issue remaining, was there portion of concealment, the arbitrators can resolve that question. It's going to be the same for breach of contract as it would be for any plaintiff's other claims. So that's going to be resolved, too, in the arbitration. Plus, plaintiffs can get their discovery in the arbitration. They can get depositions. They can get documents produced. And the arbitration panel can resolve lots of thorny questions about what discovery is appropriate, and they can supervise that discovery. So that's all going to happen. So I think it was proper for Judge Ford, sitting with this case in front of him, this complexity. Before too long is out, we're going to have four published appellate opinions this time next year in this case. I think it was fair for Judge Ford to say, look, I'm going to outsource some of this work. I've got the parties have agreed to arbitrate these two claims, and the appellate court has said those claims have to be arbitrated. I'm going to let the arbitration panel do some of the work for me. The parties are going to pay for these arbitrators. They're going to be ex-judges or seasoned litigators. And I'll have those arbitrators resolve some of these questions and then come back to me, and the case will be wrapped up in a nice little ribbon. Discovery will be mostly done. Thorny legal and procedural questions will be resolved. We'll know if there's fraudulent concealment or not. We'll know if the cons were pansies or if they knew what they were doing. That's all going to be resolved by these arbitrators. And the parties can come back to me at some point in the future and say, okay, here's what the panel ruled. That's going to make Judge Ford's life a lot easier. Potentially, it could resolve the whole case. If the panel rules on fraudulent concealment, it could resolve the case. If the panel rules that the cons knew what they were doing, it could resolve the case. But at the very least, it's going to make Judge Ford's life a lot easier. And Mr. Deary says, well, the arbitration could take years. It's been two years. He's had two years to file his arbitration. He hasn't done it. And even leaving that aside, the one thing we do know is that arbitration is quicker than litigation. So even if we're just looking at starting tomorrow, you're still going to have all these questions resolved much more quickly in arbitration than in litigation. So for all those reasons we think Judge Ford should be affirmed, we certainly think under the abuse of discretion standard, which you have to look at the act arbitrarily, to the act beyond the bounds of reason, we think that he should not make such a fine name because it was well within his discretion to say, look, I'm just going to let these two events happen, and that goes to the control of my docket, and I'm going to let BDO and plaintiffs arbitrate. I'm going to let the Supreme Court cross the square rule, and then they can come back to me. So we think if you find that there is jurisdiction, which you shouldn't, if you find there is jurisdiction, then Judge Ford should be affirmed. Thank you. Thank you very much. Gary? Thank you. First of all, with respect to jurisdiction, I think the case law is very clear that when Judge Ford's stayed the entire case, that's considered an injunctive order that the cons can appeal at this point. BDO claims that this is an administrative, ministerial discovery order. Apparently today they're taking the position that Judge Ford did this to make his life easier, and there's no evidence that that's the case. There's no case law that supports that position here. If Judge Ford had entered an order with respect to the alternative relief that said, we're going to stay the discovery until BDO files a motion to dismiss, which would be in a few weeks, then yes, that would be considered, based on the law, a ministerial discovery order. But that's not what's here. BDO asked for a complete stay, and the court granted a complete stay. So under the law that's cited by both BDO and the cons, this court has jurisdiction. Apparently BDO's argument today is that Judge Ford can just decide that he doesn't want to deal with discovery in cases, in a case that this court has told the trial court will be in court. That we need to do all of our discovery for that case in arbitration. And that's not the way it works. The cons did not agree to arbitrate the investment strategy claims, nor did it agree to arbitrate all the tort claims. And so what BDO would have us do is to litigate those claims during discovery in an arbitration, and then come back to the court after an arbitrator has decided what discovery we get and what's relevant. What BDO doesn't tell the court is their consulting agreement that would control, allegedly, the breach of contract arbitration, has a provision that says the cons get no discovery. And in fact, in BDO's motion briefed to this court, one of the issues that they raised with having simultaneous proceedings, is that the cons may somehow bypass that limitation in arbitration through the court proceeding. So all this talk about the cons can go to the arbitration and get all this discovery, number one, we're not required to do so under this court's order and under the contract. We didn't agree to arbitrate those issues. And number two is, what BDO wants the cons to do is to have the discovery take place in the arbitration, where they're going to argue that we get no discovery. Finally, with respect to when Mr. Kahn knew or should have known, they briefed that issue. The trial court stated, and they relied upon the case Shalom. The trial court said that case isn't even relevant. What that case involved was a motion for summary judgment involving whether a plaintiff had reason to reasonably rely upon the advisor with respect to their fraud claim. In the breach of contract claim, fraud, reasonable reliance, is not at issue. So the bottom line from the cons standpoint is that the trial court abused its discretion in staying the entire case pending the Grant-Thornton appeal and pending the arbitration of the breach of contract claim. Thank you. All right. Thank you, Counselor. I take this matter under advisement and stand in recess.